# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LISARDO S.,[1] <br><br> Plaintiff, <br><br> v. <br><br> NANCY A. BERRYHILL, Acting Commissioner of Social Security, <br><br> Defendant. | Case No. 5:18-cv-00480-AFM <br><br> **MEMORANDUM OPINION AND ORDER REVERSING AND REMANDING DECISION OF COMMISSIONER** |

Plaintiff filed this action seeking review of the Commissioner's final decision denying his applications for disability insurance benefits and supplemental security income. In accordance with the Court's case management order, the parties have filed memorandum briefs addressing the merits of the disputed issues. The matter is now ready for decision.

## BACKGROUND

On April 2, 2014, Plaintiff applied for disability insurance benefits and

---

[1] Plaintiff's name has been partially redacted in accordance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

supplemental security income, alleging disability since January 4, 2014. Plaintiff's applications were denied initially and on reconsideration. (Administrative Record ["AR"] 111-118.) A hearing took place on January 10, 2017 before an Administrative Law Judge ("ALJ"). Both Plaintiff, who was represented by counsel, and a vocational expert ("VE") testified at the hearing. (AR 37-85.)

In a decision dated April 28, 2017, the ALJ found that Plaintiff suffered from the following severe impairments: obsessive compulsive disorder, anxiety disorder, and depressive disorder. (AR 20.) The ALJ concluded that Plaintiff retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but restricted to work involving simple and repetitive tasks; limited public contact; and a work setting that is predictable, routine, with infrequent changes and not requiring more than simple decision making. (AR 23-24.) Relying upon the testimony of the VE, the ALJ found that Plaintiff was capable of performing work existing in significant numbers in the national economy, including the occupations of laundry worker, kitchen helper, and hand packager. (AR 30-31.) Accordingly, the ALJ concluded that Plaintiff was not disabled. (AR 31-32.)

The Appeals Council subsequently denied Plaintiff's request for review (AR 1-6), rendering the ALJ's decision the final decision of the Commissioner.

**DISPUTED ISSUE**

Whether the ALJ properly evaluated the opinion of examining psychiatrist, Denisse Joseph, M.D.

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). Substantial evidence means "more than a mere scintilla" but less than a preponderance. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Lingenfelter v. Astrue*, 504 F.3d

1028, 1035 (9th Cir. 2007). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. This Court must review the record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Lingenfelter*, 504 F.3d at 1035. Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).

## DISCUSSION

**1. Medical Record**

<u>Dr. Joseph</u>

On July 23, 2014 and at the request of the Department of Social Services, Denisse Joseph, M.D., performed a consultative psychiatric examination of Plaintiff. Plaintiff informed Dr. Joseph that he had a long history of obsessive compulsive disorder, especially regarding a phobia to germs. Plaintiff also complained of depression, and anxiety. (AR 305.) Plaintiff told Dr. Joseph that he had been seeing a psychiatrist and a therapist for six months. He had been placed on Prozac and trazodone and that he currently took Zoloft and Xanax, but the medications did not help. (AR 306.)

Under the heading "Activities of Daily Living," Dr. Joseph noted that Plaintiff was able to dress, bath, and take care of his personal hygiene, but it took him a lengthy amount of time to do so. Plaintiff also was able to go out alone, drive, and pay bills. According to Plaintiff, his relationships with his family were poor, and he did not relate to friends. (AR 307.)

Per Dr. Joseph's mental status examination, Plaintiff was "neatly and casually groomed," and made "fair eye contact and fair interpersonal contact with this interviewer." Plaintiff was cooperative and able to volunteer information spontaneously. Dr. Joseph noted "some obvious psychomotor agitation, but no

3

psychomotor retardation." Although Plaintiff appeared "genuine and truthful," he also exhibited "some exaggeration and manipulation." (AR 308.)

Dr. Joseph recorded Plaintiff's speech as "tense without dysarthria." The rate and prosody were normal, and the volume was intermittently increased. (AR 308.) Plaintiff's thoughts were logical and linear, "but not goal directed other than needing financial assistance." She noted that Plaintiff was circumstantial, disorganized, and tangential. However, no loose associations, flight of ideas, mind racing, or thought blocking were present. (AR 308.) Plaintiff's thought content was generally relevant. Dr. Joseph detected no bizarre or psychotic thought content, delusional material, neologisms, or suicidal ideation. Plaintiff denied auditory or visual hallucinations. (AR 308.) Plaintiff's mood was anxious and depressed; his affect was irritable, angry, sad, and constricted. His affect was appropriate to context and congruent with thought content. (AR 308.)

Dr. Joseph found Plaintiff alert and oriented to person, place, time, and circumstances. He was able to perform digit span forward, but not backward. Plaintiff could recall three items immediately and after five minutes. He also was able to list the last four United States Presidents. His fund of knowledge was normal. Plaintiff's attention, concentration, and calculations were normal. According to Dr. Joseph, Plaintiff's insight and judgment did not appear to be intact regarding his current situation. As an example, Dr. Joseph noted that when asked how he would handle it if he wrote a check that bounced, Plaintiff responded, "I don't know." (AR 309.) She opined that Plaintiff's intelligence was average. (AR 310.)

Dr. Joseph diagnosed Plaintiff with obsessive compulsive disorder, depressive disorder, and generalized anxiety disorder. She opined that Plaintiff's current global assessment of functioning ("GAF") score was 54. She stated that Plaintiff would benefit from continued psychotherapy and active treatment including psychotropic mediations. Under "Prognosis," Dr. Joseph wrote that from a psychiatric standing, Plaintiff's condition is "fair." (AR 310.)

4

Dr. Joseph included a functional assessment based upon her examination. Dr. Joseph opined that Plaintiff was not impaired in his ability to perform simple and repetitive tasks or his ability to maintain regular attendance. (AR 310.) However, she opined that Plaintiff was moderately impaired in the following functional areas: his ability to perform detailed and complex tasks; his ability to perform work activities on a consistent basis; his ability to perform work activities without special or additional supervision; his ability to complete a normal workday or work week without interruptions resulting from psychiatric conditions; his ability to relate and interact with coworkers and the public; and his ability to deal with the usual stresses encountered in competitive work. (AR 310-311.)

Dr. Frank

Michael Franc, Psy.D, completed an Evaluation Form for Mental Disorders on February 26, 2015. Dr. Franc indicated that he began treating Plaintiff in October 2013 and had weekly visits since that time. (AR 333.) Dr. Franc noted that Plaintiff was pleasant and cooperative. His intellectual functioning, concentration, task completion, and contact with reality were normal. (AR 334-335.) Dr. Franc opined that Plaintiff was unable to adapt to normal stressors in the work environment because of compulsions and anxiety about contamination. (AR 335.) He also opined that Plaintiff had no useful ability to function in the following areas: maintaining regular work attention and working in coordination with or proximity to others without becoming distracted. Furthermore, Dr. Franc opined that Plaintiff's mental impairment rendered him unable to meet competitive standards in the following areas: complete a normal workday and work week without interruptions from psychologically based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; respond appropriately to changes in routine work setting; deal with stress of semiskilled and skilled work; and interact appropriately with the public. Finally, Dr. Franc opined that Plaintiff would be absent from work more than four days per month. (AR 336-339.)

<u>Dr. Gulasekaram</u>

Bala Gulasekaram, M.D., completed a Mental Disorder Questionnaire Form in May 2016. Dr. Gulaskaram had treated Plaintiff since February 2008 and saw him every three months. (AR 352, 356.) He diagnosed Plaintiff with depression, anxiety, and obsessive compulsive behavior. He noted that Plaintiff was cooperative, but had many fears – in particular, a fear of germs. Dr. Gulasekaram indicated that Plaintiff's intelligence was average, and Plaintiff had no memory impairment. (AR 352-353.) He also indicated that Plaintiff was able to attend to his activities of daily living. (AR 354.) Dr. Gulasekaram opined that Plaintiff's ability to adapt to work or work-like situations was poor. (AR 355.)

<u>State Agency physicians</u>

Both State Agency physicians, Judy K. Martin, M.D., and Phaedra Caruso-Radin, Psy.D., opined that Plaintiff was moderately limited in the following areas: his ability to carry out detailed instructions; his ability to maintain attention and concentration for extended periods; his ability to work in coordination with or in proximity to others without being distracted; his ability to complete a normal workday and workweek without interruptions from psychiatric symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; his ability to interact appropriately with the general public; his ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; his ability to maintain socially appropriate behavior and to adhere to basic standards of cleanliness; and his ability to respond appropriately to changes in the work setting. (AR 93-95, 106-108.)

**2. The ALJ's Decision.**

In assessing Plaintiff's RFC, the ALJ discussed the foregoing medical opinions. The ALJ assigned "partial weight" to the opinions of the State Agency reviewing physicians. However, she specifically rejected the State Agency physicians' opinions that Plaintiff was limited to minimal social contacts. The ALJ

concluded that the social contacts limitation was inconsistent with evidence showing minimal treatment and inconsistent with Dr. Joseph's report indicating that Plaintiff had "normal grooming, eye contact, interpersonal contact, cooperation, behavior, logical thoughts, thought content, orientation, cognitive function, attention, concentration, calculations, fund of knowledge, and intelligence." (AR 27.) Further, the ALJ found that the term "'minimal' social contact" was "vague and unclear." (AR 27.)

The ALJ also assigned "partial weight" to the opinion of Dr. Joseph. However, the ALJ specifically rejected Dr. Joseph's limitations related to coworkers, additional supervision, and an inability to complete a normal workday or work week. The ALJ explained that "the term 'moderate' is not defined and does not specify [Plaintiff's] functional abilities." (AR 27.) In addition, the ALJ found these three limitations were inconsistent with Dr. Joseph's report, which found that Plaintiff "had normal grooming, eye contact, interpersonal contact, cooperation, behavior, logical thoughts, thought content, orientation, cognitive function, attention, concentration, calculations, fund of knowledge and intelligence." (AR 27.)

The ALJ afforded little weight to the opinion of Dr. Franc, finding it conclusory, inadequately supported by objective medical evidence, and inconsistent with Plaintiff's admitted activities of daily living. (AR 28.) Similarly, the ALJ gave little weight to the opinion of Dr. Gulasekaram, finding it had "no probative value." The ALJ reiterated most of the same reasons he provided for rejecting Dr. Franc's opinion and added that Dr. Gulasekaram's opinion "primarily summarized [Plaintiff's] subjective complaints…." (AR 28.)

As mentioned above, the ALJ concluded that Plaintiff retained the RFC to perform simple, repetitive tasks; work involving limited public contact; and work in settings that were predictable, routine, with infrequent changes, and did not require more than simple decision making. (AR 23-24.)

**3. Analysis.**

A claimant's RFC is the most he can still do despite his limitations. *Smolen v. Chater*, 80 F.3d 1273, 1291 (9th Cir. 1996) (citing 20 C.F.R. § 404.1545(a)). In determining a claimant's RFC, an ALJ must consider all relevant evidence of record, including medical opinions. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008); *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006); *see* 20 C.F.R. § 404.1527(b). Before rejecting the uncontradicted opinion of a treating or examining physician, an ALJ must provide clear and convincing reasons for doing so. *Hill v. Astrue*, 698 F.3d 1153, 1159-1160 (9th Cir. 2012); *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008). "Even if contradicted by another doctor, the opinion of an examining doctor can be rejected only for specific and legitimate reasons that are supported by substantial evidence in the record." *Hill,* 698 F.3d at 1160 (quoting *Regennitter v. Comm'r of the Soc. Sec. Admin.*, 166 F.3d 1294, 1298-1299 (9th Cir. 1999)). An ALJ meets the requisite specific and legitimate standard "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (citations and internal quotation marks omitted).

**a. The ALJ rejected three of Dr. Joseph's opinions.**

Plaintiff contends that the ALJ impermissibly rejected Dr. Joseph's opinions without providing legally sufficient reasons for doing so. (ECF No. 18 at 4-10.) The Commissioner does not directly address this contention. Instead, the Commissioner argues that the ALJ properly translated Dr. Joseph's opinions into a concrete RFC assessment. (ECF No 19 at 4-9.) In making this argument, the Commissioner necessarily contends that the ALJ did not actually reject Dr. Joseph's opinions, but rather "interpreted" them.

The Commissioner is correct that an ALJ's RFC assessment may sufficiently account for a physician's opinion regarding limitations without using the same

language as the physician. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1173-1174 (9th Cir. 2008). So, for example, an RFC may account for a physician's opinion that the claimant suffers from moderate difficulties in concentration and persistence by assessing an RFC restricting the claimant to simple, routine, repetitive tasks. *See Hughes v. Colvin*, 599 F. App'x 765, 766 (9th Cir. 2015); *Stubbs-Danielson*, 539 F.3d at 1171 (ALJ's limitation to "simple, routine, repetitive" work sufficiently accommodated physician's opinion evidence that claimant had "moderate" limitation in pace and "other mental limitations regarding attention, concentration, and adaption"). Similarly, an RFC for independent work with no more than occasional public interaction adequately accommodates a physician's opinion that the claimant is moderately limited in social functioning. *Hughes*, 599 F. App'x at 766.

Here, the ALJ acknowledged Dr. Joseph's conclusion that Plaintiff had "moderate limitations" and found these limitations "generally consistent with the above residual functional capacity assessment." (AR 27.) The ALJ assessed Plaintiff with an RFC of (a) simple work; (b) limited contact with the public; (c) a predictable work routine; and (d) no more than simple decisions. This RFC fairly accommodates Dr. Joseph's opinions that Plaintiff was moderately limited in (a) his ability to perform detailed complex tasks, (b) relate to the public and (c) deal with stress. *See, e.g.*, *Williams v. Colvin*, 2016 WL 7480245, at *7-8 (C.D. Cal. Dec. 29, 2016) (ALJ adequately accounted for medical opinion that plaintiff suffered moderate difficulties in concentration, persistence, and pace by assessing plaintiff with the mental RFC to perform "simple, repetitive tasks").

However, contrary to the Commissioner's suggestion, the ALJ did not purport to accommodate all of Dr. Joseph's opinions regarding Plaintiff's moderate limitations. The ALJ explicitly rejected Dr. Joseph's opinions that Plaintiff is moderately limited in his abilities to (a) relate to coworkers, (b) perform work without special or additional supervision, and (c) complete a normal workday or workweek. (AR 27.) Furthermore, these three limitations are not subsumed within the ALJ's

RFC restricting Plaintiff to simple work, limited contact with the public, and a predictable work routine with no more than simple decision making. *See, e.g., Raymond v. Berryhill*, 2018 WL 3691842, at *6 (C.D. Cal. Aug. 2, 2018) ("Although the ALJ's restriction for unskilled work may encompass Plaintiff's moderate limitations in concentration, persistence, and pace, the RFC does not sufficiently account for Plaintiff's moderate limitations in performing routine work duties and maintaining consistent attendance in the workplace."); *Atkinson v. Colvin*, 2015 WL 5840210, at *3 (C.D. Cal. Oct. 5, 2015) (RFC restriction to non-complex tasks "may encompass the concentration, persistence, and pace limitations assessed" by physician, but did "not sufficiently account for Plaintiff's moderate limitations in performing activities within a schedule, maintaining regular attendance in the workplace, or completing a normal workday and workweek without interruption"); *Hunter v. Colvin*, 2015 WL 501466, at *1 (C.D. Cal. Feb. 5, 2015) (ALJ's RFC limiting claimant's contact with the public did not account for physician's opinion that claimant was limited in ability to interact with co-workers and supervisors); *Jackson v. Colvin*, 2014 WL 562240, at *2 (C.D. Cal. Feb. 11, 2014) (ALJ's RFC of "mild-to-moderate limitations in understanding and remembering tasks, sustaining concentration and persistence, socially interacting with the general public and adapting to workplace changes" did not encompass opinion that claimant was moderately limited to interacting with co-workers, maintaining regular attendance, and completing normal workday and workweek). Thus, the Court rejects the Commissioner's characterization of the ALJ's decision as essentially "translating" Dr. Joseph's opinions and incorporating them into an RFC.

> **b. The ALJ failed to provide legally sufficient reasons for rejecting Dr. Joseph's opinions.**

As set forth in detail above, at least some of Dr. Joseph's opinions regarding Plaintiff's moderate limitations were uncontroverted. In particular, both the State Agency physicians and Dr. Joseph specifically concluded that Plaintiff was limited

in his ability to interact with others. No other physicians' opinions were inconsistent with this conclusion. Consequently, the ALJ arguably was required to provide clear and convincing reason for rejecting at least this opinion. Nevertheless, even assuming that some or all of Dr. Joseph's opinions were controverted, the ALJ still was required to provide specific and legitimate reasons supported by substantial evidence in the record for rejecting them. *Orn*, 495 F.3d at 632.

The ALJ provided two reasons for rejecting Dr. Joseph's opinions. First, the ALJ stated that Dr. Joseph's opinion was "vague and unclear" because she assessed "moderate limitations" and "the term 'moderate' is not defined and does not specify the claimant's functional abilities." (AR 27.) At least in the circumstances of this case, merely characterizing a term that is frequently used in the social security context as "vague and unclear" is not a sufficient reason to reject an examining physician's opinion. *See Vasquez v. Berryhill*, 2017 WL 2633413, at *7 (E.D. Cal. June 19, 2017) (ALJ could not properly reject examining physician's opinion that claimant had moderate limitations by stating that the definition of the term "moderate" was "vague and ambiguous"); *Lockhart v. Comm'r of Soc. Sec.*, 2015 WL 5173049, at *9 (E.D. Cal. Sept. 3, 2015) (ALJ erred by rejecting physician's opinion regarding claimant's concentration ability as vague without seeking to develop and clarify the record), *report and recommendation adopted*, 2015 WL 11233047 (E.D. Cal. Nov. 4, 2015); *Dean v. Colvin*, 2015 WL 6158874, at *7 (W.D. Wash. Sept. 29, 2015) (the ALJ improperly rejected physician's opinion of functional limitations as "mild" and "moderate" on ground that terms were "too vague to be useful"), *report and recommendation adopted*, 2015 WL 6158913 (W.D. Wash. Oct. 19, 2015).

Second, the ALJ found that Dr. Joseph's opinions that Plaintiff was limited in his ability to relate to coworkers, work without supervision, and complete a normal workday or work week were inconsistent with Dr. Joseph's findings showing that Plaintiff "had normal grooming, eye contact, interpersonal contact, cooperation,

behavior, logical thoughts, thought content, orientation, cognitive function, attention, concentration, calculations, fund of knowledge, and intelligence." (AR 27.)

As a general matter, an ALJ may reject a medical conclusion that is inconsistent with the findings from the physician's own examination. *See Hernandez v. Berryhill,* 707 F. App'x 456, 457-458 (9th Cir. 2017) (fact that physician's opinion that was inconsistent with physician's "own treatment notes" is a specific and legitimate reason for discounting opinion); *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005) (discrepancy between a physician's notes and recorded observations and opinions and the physician's assessment of limitations is a clear and convincing reason for rejecting the opinion).

Here, however, the ALJ's conclusion that Dr. Joseph's report was inconsistent with her opinions is not supported by the record. In particular, it is not evident, and the ALJ did not explain, how findings that Plaintiff had "fair eye contact and fair interpersonal contact with this interviewer," was cooperative, logical, able to perform calculations and of average intelligence, were inconsistent moderate limitations in an ability to interact with coworkers, work without supervision, or complete a normal workday or workweek. *See Anderson v. Berryhill*, 2018 WL 2081848, at *4 (C.D. Cal. Apr. 30, 2018) (although ALJ correctly noted physician's report found claimant was "polite and cooperative," "oriented in all spheres," "made good eye contact," had normal speech, and "reportedly had not abused drugs in a year," he failed to "explain how these particular aspects of the mental status examination are inconsistent with the limitations assessed by Dr. El Sokkary, such as moderate restrictions in the ability to understand, remember, and perform simple tasks and difficulties completing a normal workday/workweek without brief interruptions from psychiatric symptoms"); *Deen v. Colvin*, 214 F. Supp. 3d 1000, 1006 (W.D. Wash. 2016) (ALJ's reason for rejecting physician opinion was not supported by substantial evidence because report finding claimant cooperative during a portion of the evaluation did not undermine physician's findings concluding that claimant would

have severe social impairments in a full-time workplace); *see also, Popa v. Berryhill*, 872 F.3d 901, 906 (9th Cir. 2017) (ALJ failed to provide legally sufficient reasons for rejecting examining psychologist's opinion that claimant was "not likely to maintain regular attendance [at work] due to [her] mental health" where the ALJ concluded that the opinion conflicted with the claimant's daily activities but failed to explain how the ability to attend church, shop for groceries, and watch television establishes the ability to maintain regular attendance at work).

Moreover, the ALJ did not address several of Dr. Joseph's other findings in the mental status examination. For example, the ALJ failed to consider Dr. Joseph's findings that Plaintiff's thought process was circumstantial, disorganized, and tangential; his mood was anxious and depressed; his affect was irritable, angry, sad, and constricted; and his insight and judgment did not appear to be intact regarding his current situation. (AR 308-310.) The ALJ's selective reliance on only some of Dr. Joseph's findings in the mental status examination does not provide a sufficient basis for rejecting her opinion. *See Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001) (a treating doctor's "statements must be read in context of the overall diagnostic picture he draws"); *Anderson*, 2018 WL 2081848, at *4 (ALJ improperly relied only on some findings to conclude physician's report was inconsistent with opinion).

The Commissioner points out that moderate mental limitations are defined as "more than a slight limitation in this area but the individual is still able to function satisfactorily." (ECF No. 19 at 5.) While moderate limitations do not necessarily indicate that Plaintiff is unable to perform all work activity, the ALJ was required to either include these limitations in Plaintiff's RFC assessment or provide legally sufficient reasons for rejecting them. *See Farnetti v. Comm'r of Soc. Sec.*, 2018 WL 4182493, at *4 (E.D. Cal. Aug. 29, 2018) (that "moderate limitations" do not render a claimant disabled does not permit ALJ to ignore them by failing to include them in RFC or properly reject them); *Wiles v. Berryhill*, 2017 WL 5186333, at *3 (C.D. Cal.

Nov. 8, 2017) (although moderate limitations in various areas of functioning, such as in the ability to maintain regular attendance or to complete a normal workday and workweek are not per se disabling, ALJ erred in assessing RFC without either including the limitations or offering specific reasons for rejecting opinion).

Finally, an ALJ's failure to properly evaluate a treating physician's opinion may be harmless error when a reviewing court "can confidently conclude that no reasonable ALJ, when fully crediting the [opinion], could have reached a different disability determination." *Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015) (quoting *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055-1056 (9th Cir. 2006)). If Dr. Joseph's opinions were credited, it would likely have affected the ALJ's RFC and, consequently, the hypothetical posed to the VE. Further, the VE did not offer testimony regarding a hypothetical claimant with the limitations that the ALJ failed to properly address. (*See* AR 77-83.) Accordingly, the Court cannot conclude that the error was harmless. *See Adkins v. Berryhill*, 2018 WL 4735714, at *4 (C.D. Cal. Sept. 28, 2018) (error was not harmless because, in failing to either expressly reject or incorporate physician's restrictions into RFC or the hypothetical questions posed to the VE, the VE's opinion regarding claimant's ability to perform work lacked evidentiary value); *Devery v. Colvin*, 2016 WL 3452487, at *5 (C.D. Cal. June 22, 2016) (ALJ's erroneous failure to provide reasons for rejecting physician's limitations was not harmless because VE did not testify that a hypothetical person with those limitations could work).

## REMEDY

Ninth Circuit case law "precludes a district court from remanding a case for an award of benefits unless certain prerequisites are met." *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2016) (citations omitted). "The district court must first determine that the ALJ made a legal error, such as failing to provide legally sufficient reasons for rejecting evidence. . . . If the court finds such an error, it must next review the record as a whole and determine whether it is fully developed, is free from

conflicts and ambiguities, and all essential factual issues have been resolved." *Dominguez*, 808 F.3d at 407 (citation and internal quotation marks omitted).

Although the Court has found error as discussed above, the record on the whole is not fully developed, and factual issues remain outstanding. The issues concerning Plaintiff's alleged disability "should be resolved through further proceedings on an open record before a proper disability determination can be made by the ALJ in the first instance." *See Brown-Hunter v. Colvin*, 806 F.3d 487, 496 (9th Cir. 2015); *see also Treichler*, 775 F.3d at 1101 (remand for award of benefits is inappropriate where "there is conflicting evidence, and not all essential factual issues have been resolved") (citation omitted); *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011) (same where the record does not clearly demonstrate the claimant is disabled within the meaning of the Social Security Act).

Accordingly, the appropriate remedy is a remand for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g).[2]

IT IS THEREFORE ORDERED that Judgment be entered reversing the decision of the Commissioner of Social Security and remanding this matter for further administrative proceedings consistent with this opinion.

DATED: 2/20/2019

_____
ALEXANDER F. MacKINNON
UNITED STATES MAGISTRATE JUDGE

---

[2] It is not the Court's intent to limit the scope of the remand.

15